**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| ADRIA RIVERS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:21-CV-100 SRW |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 15. Defendant filed a Brief in Support of the Answer. ECF No. 16. Plaintiff filed a Reply.

ECF No. 17. The Court has reviewed the parties' briefs and the entire administrative record,

including the transcripts and medical evidence. Based on the following, the Court will affirm the

Commissioner's decision.

**I.    Factual and Procedural Background**

On February 21, 2020 and March 23, 2020,[2] Plaintiff Adria Rivers protectively filed

applications for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.*,

---

[1] Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Kilolo Kijakazi should be substituted for Andrew M. Saul in this matter.

[2] The ALJ indicated Plaintiff filed both applications on February 20, 2020. Tr. 10. Review of the record, however, reflects the application for DIB was filed on February 21, 2020, and the application for SSI was filed on March 23, 2020. Tr. 162-70.

and supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 162-70.

Plaintiff's applications were denied on initial consideration and reconsideration. Tr. 87-105. On

July 6, 2020, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 106-08.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on December

9, 2020. Tr. 27-51. Plaintiff testified concerning her disability, daily activities, functional

limitations, and past work. *Id.* The ALJ also received testimony from vocational expert ("VE")

Darrell W. Taylor, Ph.D. *Id.* at 47-50. On February 2, 2021, the ALJ issued an unfavorable

decision finding Plaintiff not disabled. Tr. 7-25. Plaintiff filed a request for review of the ALJ's

decision with the Appeals Council. Tr. 158-61. On May 14, 2021, the Appeals Council denied

Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the

Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court

accepts the facts as presented in the parties' respective statements of facts and responses. The

Court will discuss specific facts relevant to the parties' arguments as needed in the discussion

below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is

not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a severe impairment "which significantly limits claimant's

physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th

Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts

only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*

20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the

impairment's medical severity. If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§

416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do

despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2024. Tr. 12. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 6, 2020. *Id*. Plaintiff has the severe impairments of post-traumatic stress disorder ("PTSD") and major depressive disorder. Tr. 12-13. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 13-14. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] is limited to work involving simple, routine tasks and simple work-related decisions. She can perform work that involves occasional decision making and occasional changes in the work setting. She is limited to work involving occasional interaction with the public and coworkers and cannot perform fast-paced work such as work on an assembly line.

Tr. 14. The ALJ found Plaintiff is unable to perform any past relevant work as a nurse assistant. Tr. 17. The ALJ further found Plaintiff was born on January 26, 1985 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 18. Plaintiff has at least a high school education. *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. Tr. 18-19. Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as food service worker (*Dictionary of Occupational Titles* ("*DOT*") No. 319.687-010, with approximately 320,000 positions nationally), hand packager (*DOT* No. 920.687-014, with approximately 164,000 positions nationally), and cleaner (*DOT* No. 381.687-034, with approximately 370,000 positions nationally). Tr. 19. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from February 6, 2020 through the date of his decision, issued on February 2, 2021. *Id.*

## IV.  Discussion

Plaintiff argues the ALJ erred because the RFC is not supported with substantial evidence. Specifically, Plaintiff contends the opinions of her treating provider and the consultative examiner indicated significant impairments in her ability to concentrate and adapt in the workplace, which the ALJ did not properly incorporate into her RFC.

In determining Plaintiff's RFC, the ALJ first considered her hearing testimony in which she testified to paranoia, depression, anxiety, and suicidal thoughts. Tr. 15, 38-46. She described

6

her symptoms to include panic attacks, flashbacks, crying spells, and nightmares. *Id.* She stated she was "easily triggered" by "[c]ertain smells, certain color underwear, certain noises, [and] certain lighting[.]" Tr. 39. She claimed to isolate herself and limit contact with people. Tr. 15, 39-46. In her Function Report, Plaintiff further described issues with memory, completing tasks, concentrating, and understanding. Tr. 15, 259. Plaintiff explained she "tend[ed] to forget what [she] is in the process of doing" and "can't focus long enough to get [tasks] done due to paranoia." *Id.*

The ALJ then reviewed the medical record, citing first to a February 2020 office visit with her treating psychiatrist, Dr. John Lake, at Southeast Behavioral Health Clinic. Tr. 15, 347-48. Plaintiff reported taking Xanax two to four times per day depending on her stress level, and noted it provided "quite a bit" of relief. Tr. 347. Though she reported continuing PTSD symptoms due to ongoing legal issues, she did not find the symptoms debilitating. *Id.* Plaintiff said she was "handling everything fairly well." Tr. 348. Upon a physical examination, Plaintiff exhibited a mildly constricted affect, but an improved mood, goal-direct thought process, and good insight and judgment. *Id.*

In March of 2020, Plaintiff told Dr. Lake her medications help with sleep, anxiety, and irritability. Tr. 16, 345. She also reported feeling safe in her boyfriend's home, where she had less exposure to situations that could trigger her PTSD. Tr. 345. Dr. Lake noted her PTSD was better, and her mood disorder seemed to be "at least in partial remission." Tr. 16, 345. Dr. Lake further noted Plaintiff was less emotional and on edge, had an improved mood, and exhibited a "much more stable affect." Tr. 345-346. Plaintiff also appeared with a goal-directed thought process, and good insight and judgment. Tr. 346.

In May of 2020, Plaintiff appeared for an office visit with Dr. Lake and reported daily PTSD symptoms because she had recently learned that the individual who allegedly sexually assaulted her at a young age would not be prosecuted. Tr. 16, 380. Dr. Lake indicated her past work as a nurse assistant involved "working with mentally disabled patients," which "would trigger her PTSD symptoms." *Id.* Despite Plaintiff's complaints of being "down at times," she denied feeling depressed, and Dr. Lake believed her depression was in remission. Tr. 381. Plaintiff expressed her belief that her medications were effective. Tr. 380. Plaintiff stated her intent to begin working out when her gym reopened. *Id.* Upon physical examination, and despite exhibiting an anxious mood, Plaintiff had stable affect, a goal-directed thought process, and good insight and judgment. Tr. 381. Dr. Lake adjusted her medication to address her PTSD symptoms. *Id.*

In August of 2020, Plaintiff told Dr. Lake she was no longer in a constant state of fear, recently got married, and was "quite happy with that." Tr. 16, 404. Though she reported difficulty sleeping and poor energy, Dr. Lake indicated she "gained control of many of her symptoms" through psychotherapy treatment, and appeared "quite stable." Tr. 16, 404-05. He observed Plaintiff's mood disorder to be in partial, if not full, remission. *Id.* Upon examination, Plaintiff exhibited a stable affect, goal-directed thought process, and good insight and judgment. Tr. 405. Dr. Lake adjusted Plaintiff's medication, and directed her to follow up in three months. *Id.*

In September of 2020, Plaintiff reported having little energy and overeating, but felt as if she was "doing very well" overall as she lost seven pounds and successfully weaned herself off of Lexapro.[3] Tr. 16, 406. Plaintiff stated her medication helped her sleep and relieved her

---

[3] Lexapro, or Escitalopram, is a medication used to treat depression and generalized anxiety disorder. *MedlinePlus*, available at https://medlineplus.gov/druginfo/meds/a603005.html (last visited April 11, 2022).

anxiety. *Id.* Plaintiff expressed that she felt her symptoms were due to external stressors, not a reflection of her internal mood. *Id.* She also told Dr. Lake she did not feel down or depressed. *Id.* The treatment notes indicate Plaintiff was stable, and her mood disorder was in full remission. Tr. 406-407. Upon physical examination, she exhibited a fully stable affect, goal-directed thought processes, and good insight and judgment. Tr. 16, 407.

The ALJ then considered the opinion evidence in the record, which included two assessments from Dr. Lake. Tr. 17. In May 2020, Dr. Lake suggested Plaintiff should avoid contact with individuals suffering from behavioral issues. *Id.*, Tr. 380-82. In November 2020, Dr. Lake submitted a "Medical Source Statement – Mental," in which he opined Plaintiff would likely miss two workdays per month and would be off task 25% of the time "when triggered." Dr. Lake further opined Plaintiff had marked limitations in working in coordination with or proximity to others without being distracted by them; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. Tr. 17, 410.

The ALJ did not find Dr. Lake's opinions to be persuasive. Tr. 17. In making this determination, the ALJ explained:

> The assessments are supported by a treating relationship. However, in his May 2020's assessment, Dr. Lake refers solely to a job function that was required by the claimant's past work as previously performed (i.e., contact with individuals who have behavioral issues). The assessment does not provide a function-by-function analysis. The November 2020 assessment was provided on a checkbox form with little explanation or analysis. The course of treatment pursued is not consistent with what one would expect if the claimant were truly as limited as the doctor reported in November 2020. There is no evidence of emergency treatment for psychiatric problems, psychiatric hospitalization, or participation in a mental health day treatment program during the adjudicatory period.

Tr. 17.

The ALJ then considered the October 12, 2020 "Psychological Evaluation" by consultative psychiatric examiner Steven Adams, Psy.D. Tr. 17, 411-15. Dr. Adams saw Plaintiff in person and administered a clinical interview, adult history form, and mental status examination. Tr. 414. Regarding her RFC, Dr. Adams wrote that Plaintiff "seems able" to understand and remember simple instructions, but does "not seem able" to sustain her concentration and persistence on simple tasks, interact in moderately demanding social situations, and adapt to a typical work environment. Tr. 17, 415.

The ALJ did not find Dr. Adams' opinion persuasive. Tr. 17. In making this determination, the ALJ explained:

> The doctor is an independent medical expert who examined the claimant. However, the assessment was based on a one-time examination. The assessment is not fully supported by the examination findings, which showed an anxious mood and anxious behavior (e.g., trembling and shaky voice), but also showed appropriate eye contact, responsiveness, and good insight and judgment. It also is not definitive in its restrictions (e.g., "does not seem able to"). The assessment is not consistent with the medical observations, which were generally normal[.]

Tr. 17.

Next, the ALJ cited to the opinions of state agent psychiatric consultants Steven Akeson, Psy.D. and Stephen Scher, Psy.D. from May 2020 and June 2020, respectively. Tr. 18, 416-28. Both Dr. Akeson and Dr. Scher determined Plaintiff's mental impairments were not severe and did not cause more than a minimal effect on her ability to perform basic work-related activities. *Id.* As to these opinions, the ALJ stated:

> The[se] assessment[s] [are] supported by a detailed explanation, rationale, and analysis of the available medical evidence of record at the time. However, the doctors did not review the entire record available at the hearing level. The assessment is not consistent with the claimant's treatment history, which showed ongoing mental health treatment. It is not consistent with the opinions of Drs. Lake and Adams, who are examining sources. The undersigned finds that there is sufficient evidence to find that the claimant has severe mental impairments.

10

Tr. 18.

After reviewing the hearing testimony, Function Report, and medical record, including opinion evidence, the ALJ formulated Plaintiff's RFC. The ALJ determined Plaintiff could perform a full range of work at all exertional levels with specific nonexertional limitations. Tr. 14. In making this determination, the ALJ found Plaintiff's treatment to be "essentially routine and/or conservative in nature," and generally effective in reducing and managing her symptoms. *Id.* The ALJ further noted Plaintiff did not report the degree of symptoms alleged at the hearing or in her disability application to her treating physicians. *Id.* Additionally, the ALJ noted Plaintiff's allegations were generally inconsistent with medical observations in the record, which reflected largely normal clinical findings and physical examinations. *Id.*

Plaintiff argues her RFC was not supported by substantial evidence because the ALJ was incorrect in determining the following: (1) her treatment was routine and/or conservative in nature; (2) her treatment was effective in controlling her symptoms; (3) Plaintiff did not report the degree of symptoms she alleged in the hearing or disability application to treating sources; (4) Plaintiff's allegations were generally inconsistent with medical observations; and (5) the opinions of Dr. Lake and Dr. Adams were not persuasive. The Court will address each argument individually.

A. *Substantial evidence supports Plaintiff's treatment was routine and/or conservative in nature.*

Routine or conservative treatment supports a finding that a claimant is not disabled. "Claims of disabling symptoms may be discredited when the record reflects minimal or conservative treatment." *Brown v. Astrue*, 2012 WL 886879, at *14 (E.D. Mo. Mar. 15, 2012) (*citing Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). *See also Reece*, 834 F.3d at 909 (affirming claimant was not disabled, in part because claimant's treatment was routine and

11

conservative). Treatment that does not involve more aggressive treatments than appointments with a psychiatrist, therapy, and prescription medications is routine. *Fritzke v. Colvin*, 2015 WL 12781200, at *14 (D. Minn. Mar. 2, 2015). *See also Wise v. Astrue*, 2012 WL 3156763, at *4 (W.D. Mo. Aug. 2, 2012) (affirming that claimant's treatment, which included outpatient visits and psychiatric medications, was routine and conservative treatment for her depression and anxiety).

As described above, Plaintiff's treatments consisted solely of outpatient visits, therapy appointments, and medication. Tr. 15-16. Plaintiff was even able to taper herself off of depression medication. Tr. 406. Although the fact that Plaintiff did not receive inpatient treatment is not dispositive, the lack of hospitalization supports her treatment was routine and conservative. *See Fritzke*, 2015 WL 12781200, at *14 (fact that claimant was not hospitalized after onset of disability helped support treatment was routine). Thus, there is substantial evidence that Plaintiff's treatment, considered as a whole, was routine and conservative.

B. *Substantial evidence supports effective treatment of Plaintiff's impairments.*

"If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (*quoting Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)). Further, if current treatment is not fully effective, a controllable impairment is not always disabling. *Hensley*, 829 F.3d at 933 (ALJ properly found claimant's mental impairments were controlled, or at least controllable, and therefore not disabling). Even if treatment relieves some but not all symptoms of an impairment, the impairment is not necessarily disabling. *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (affirming claimant was not disabled by speech impediment when treatment improved claimant's communication, but he still had speech difficulties); *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir.

12

1996) (affirming claimant was not disabled after treatment when she had some, but less, discomfort in her neck and lower back). A claimant's subjective statements can also provide evidence that treatment is effective. *White v. Colvin*, 129 F. Supp. 3d. 813, 823 (E.D. Mo. 2015) (claimant's statements that her medications "helped some" and that she "tolerated treatment well" were evidence that treatment was effective).

Plaintiff argues the ALJ relied on limited findings. ECF No. 15 at 6. However, the ALJ properly acknowledged that while Plaintiff experienced symptoms like anxiety and depression, medical evidence showed her treatment was generally effective. Tr. 17. Plaintiff's depression was consistently noted to be in remission in March, May, August, and September of 2020. Tr. 345-46, 380-82, 404-05, 406-07. During each of these months, she exhibited a stable affect, goal-directed thought processes, and good insight and judgment. *Id.* She successfully tapered off Lexapro in September 2020, and her PTSD symptoms improved with a medication adjustment. Tr. 406. Plaintiff's statements to her treating providers further indicated effective treatment. In February 2020, Plaintiff reported that Xanax provided "quite a bit of relief" and denied her symptoms were debilitating. Tr. 347. In March 2020, she stated her medications helped with sleep, anxiety, and irritability. Tr. 345. In May 2020, Plaintiff expressed her combination of medicines was "quite effective." Tr. 380.

Plaintiff additionally argues that evidence of fluctuating symptoms during the relevant period shows her treatment was not effective. ECF No. 15 at 6. However, fluctuations in symptoms do not negate evidence of effective treatment. *Mabry v. Colvin*, 815 F.3d 386, 392 (8th Cir. 2016) (holding that remission is inherent in psychotic illnesses and does not mean the disability has ceased, so the ALJ properly considered longitudinal evidence to determine claimant's medications were relatively effective in controlling his symptoms).

In this case the ALJ properly considered the record as a whole throughout the relevant period, and addressed evidence that Plaintiff's symptom fluctuations were situational. For example, her PTSD symptoms increased in May 2020 because she was worried about seeing the individual who allegedly sexually assaulted her. Tr. 380. Her symptoms decreased in August 2020 because Plaintiff did not have an encounter with that individual. Tr. 404. Plaintiff explicitly admitted that part of her anxiety and stress was "related to coronavirus and everything going on in the world." *Id.* "Situational stressors cannot provide the basis for a disability finding." *Freilinger v. Saul*, 2021 WL 1593257, at *7 (N.D. Iowa Feb. 4, 2021). *See also Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (affirming ALJ's decision despite fluctuations in claimant's symptoms because her medical record showed her depression was situational, related to marital issues, and improved with treatment); *Dunahoo v. Apfel*, 241 F.3d 1033, 1040 (8th Cir. 2001) (claimant's depression did not result in significant functional limitations when evidence showed "depression was due to her denial of food stamps and workers compensation and was situational").

Further, Plaintiff contends the ALJ cherry-picked evidence to support his RCF finding. ECF No. 17 at 2. The Court cannot agree. The ALJ cited to every treatment note submitted by Dr. Lake. Tr. 15-16. The ALJ acknowledged Plaintiff's constricted affect in February 2020, and her anxious mood and daily PTSD symptoms in May 2020. Tr. 15-16, 348, 380. There is only one recorded instance of Plaintiff's "frustrated mood," but on the same visit she was also described as "euthymic." Tr. 405. Moreover, the only time Plaintiff exhibited a "labile affect" was before the relevant period, in September 2019. Tr. 352.

Plaintiff also argues her treatment as a whole demonstrated ongoing symptoms like "anxiety, anhedonia, hopelessness, flashbacks, poor concentration, and paranoia." ECF No. 17 at

2. However, her medical records show otherwise. As mentioned above, Plaintiff's treatments helped her anxiety and depression symptoms. Tr. 345-46, 380-82, 404-05, 406-07. Plaintiff complained of anhedonia only once during the relevant period, in September 2020. Tr. 406. While Plaintiff testified to experiencing flashbacks, her treatment notes do not mention flashbacks. Tr. 44, 347-48, 345-46, 380-82, 403-07. Plaintiff's poor concentration was noted in August 2020 as a side effect of her medication, but her doctor adjusted her medication during that visit. Tr. 405. As discussed above, the evidence shows her paranoia was situational. Tr. 380, 404. Thus, there is substantial evidence that Plaintiff's treatment was largely affective in controlling her symptoms.

> C. *The ALJ did not err in determining Plaintiff's testimony was inconsistent with her reports to her treating sources.*

Courts normally defer to an ALJ's determination regarding the credibility of a claimant's testimony, if supported by good reasons and substantial evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). In determining a claimant's credibility, an ALJ can consider inconsistencies between the claimant's statements. "Contradictions between a claimant's sworn testimony and what [the claimant] actually told physicians weighs against the claimant's credibility." *Frank v. Colvin*, 129 F. Supp. 3d 794, 806 (E.D. Mo. 2015) (*quoting Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006)). Inconsistencies between a claimant's subjective complaints and her activities also diminish the claimant's credibility. *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001).

The record reflects inconsistencies between Plaintiff's statements at her hearing and within her disability paperwork, compared to her reports to treating providers. At her December 2020 hearing, Plaintiff claimed she has been suicidal since she was 18. Tr. 39. However, in May, July, August, September and December of 2019, treatment notes indicated that her "content of

thought reveal[ed] no suicidal ideation." Tr. 350, 352, 354-55, 357. Similarly, in February and

March 2020, Plaintiff denied any suicidal ideations, intent, or plan. Tr. 346-48. Plaintiff also

reported in her hearing that she suffered from severe depression. Tr. 42. However, Plaintiff told

Dr. Lake in September 2020 that she did not feel depressed at all. Tr. 406. Plaintiff also testified

to isolating herself at home and not wanting to go out unless she needed to attend an

appointment. Tr. 41. This statement contradicts Plaintiff's Function Report, which states she

walks outside every morning. Tr. 255. *Cf. Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)

(ALJ properly found claimant's allegations inconsistent when claimant reported difficulty

leaving her residence, but was able to travel to other places). Thus, the ALJ did not err in

considering such inconsistencies.

> D. *The ALJ did not err in considering that some of Plaintiff's allegations were inconsistent with medical observations.*

Medical observations inconsistent with a claimant's allegations about the severity of

symptoms tend to discredit the claimant's subjective reports. *Halverson*, 600 F.3d at 933

(affirming ALJ's decision when medical observations did not support claimant's allegations of

disability). An ALJ may consider a treating physician's notes about a claimant's appearance and

mood. *See White*, 129 F. Supp. 3d at 824 (claimant's allegations that her PTSD severely

impaired her were inconsistent with doctor's notes that claimant dressed appropriately, had

normal hygiene, had clear and goal directed thoughts, and was pleasant and cooperative and

oriented). The Eighth Circuit has held a claimant's allegations about the severity of impairments

can be found inconsistent with medical observations describing claimant as "attentive, alert,

focused, and appropriate when examined," even if her symptoms waxed and waned between

appointments. *Halverson*, 600 F.3d at 930.

Plaintiff alleged severe depression. Tr. 42. Substantial evidence in the medical record, however, indicates her depression was in remission with no suicidal ideation, intent, or plan. Tr. 346, 381, 405, 406. Plaintiff also alleged she tended to forget what she is doing and cannot focus long enough to complete tasks. Tr. 15. To the contrary, Plaintiff's medical record indicates she exhibited a stable affect, goal-directed thought processes, and good insight and judgment during every office visit. Tr. 346, 348, 381, 405. She was also consistently described as "alert and fully oriented." Further, Plaintiff tended to exhibit an euthymic mood. Tr. 406, 417, 419, 427. *Cf. Gladson v. Saul*, 2020 WL 6689196, at *4 (E.D. Ky. Nov. 12, 2020) (ALJ properly found claimant's allegations of mental impairments were inconsistent with medical observations when physicians routinely reported claimant had euthymic mood, intact memory, coherent thinking, linear and goal directed thoughts, and good eye contact).

Plaintiff cited *Nowling v. Colvin*, 813 F.3d 1110, 1116 (8th Cir. 2016), to bolster her argument that her allegations are consistent with medical observations. ECF No. 15 at 8. In *Nowling*, the court found the treatment notes, read as a whole, showed claimant's symptoms waxed and waned with little more than mild, short-term improvement. 813 F.3d at 1116. Here, distinguishable from *Nowling*, Plaintiff's medical record shows evidence of improvement over the relevant time period. Thus, the ALJ did not err in considering such inconsistencies.

E. *The ALJ appropriately considered the opinions of Dr. Lake and Dr. Adams.*

In determining whether a medical source is persuasive, an ALJ shall analyze: (1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; and (5) any other factor that tends to support or contradict a medical opinion. 20 C.F.R. § 416.920c(a)-(c) (2017). Supportability and consistency are the two most important factors. *Id. See also Jarmon v. Kijakazi*, 2022 WL 55494, at *2 (E.D. Ark. Jan 5, 2022) ("The ALJ is required to explain her

17

decision as to the two most important factors—supportability and consistency" but not the other

factors) (internal quotation marks omitted).

A medical opinion must indicate how a claimant's impairments affect her job-related

functions. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (physician's opinion on

claimant's disability was not credible because it did not explain why or how claimant's

impairment prevents him from carrying out work-related tasks). Further, medical opinions in

checkbox form possess little evidentiary value when they consist of conclusory statements that

cite no medical evidence. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). A physician's

opinion is less persuasive if it mentions symptoms or limitations which were not mentioned in

his treatment notes. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). A physician's opinion

that is inconsistent with medical records is also more likely to be unpersuasive. *Juszczyk v.

Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (ALJ properly discounted doctor's assessment of

claimant's mental limitations because the assessment was inconsistent with his own treatment

notes, objective testing, and other medical evidence in the record).

Here, the ALJ did not err in determining Dr. Lake's May 2020 opinion to be

unpersuasive. In his opinion, Dr. Lake noted Plaintiff should avoid contact with those who have

behavioral issues. Tr. 380. This opinion lacks support because it addresses only one job function

which she would experience as a nurse's assistant, and fails to provide evidence about how

Plaintiff's impairment affects any other function. *Id.* Though there is no evidence that his opinion

is inconsistent, "there must be some reasonable support for the opinion[.]" *Terry v. Berryhill*, 325

F. Supp. 3d 940, 951 (S.D. Iowa 2018).

Further, the ALJ did not err in determining that Dr. Lake's November 2020 medical

statement was unpersuasive. Since the statement is in checkbox form and offers no explanation

or reasoning, the opinions are conclusory in nature and lack support. Tr. 409-410. Plaintiff

argues Dr. Lake's opinion is based on clinical findings, rather than subjective arguments. ECF

No. 17 at 3. However, the statement also opines on tasks, like making work-related decisions and

responding appropriately to criticism, that were never mentioned or analyzed in Dr. Lake's

treatment notes. Tr. 410. Therefore, there is no evidence that Dr. Lake relied on anything but

subjective complaints. *Cf. Gladson*, 2020 WL 6689196, at *7 (physician's opinion discounted

because there was no indication that he relied on anything but claimant's subjective complaints

when indicated the severity of claimant's symptoms in checkbox form). Moreover, Dr. Lake's

opinions are inconsistent with Plaintiff's treatment regimen. As the ALJ notes, there is no

evidence of emergency treatment, psychiatric hospitalization, or participation in a mental health

day treatment program. Tr. 17. There is also substantial evidence Plaintiff's treatment effectively

mitigated her symptoms. Plaintiff's medical record simply does not support the limitations Dr.

Lake wrote in his November 2020 medical statement.

The Court further finds the ALJ also properly determined Dr. Adams' medical opinion to

be unpersuasive. Dr. Adams based his findings on a one-time evaluation of Plaintiff. Tr. 411-

415. *See Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003) ("the opinion of a consulting

physician who examines a claimant once … does not generally constitute substantial evidence")

(*quoting Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). Further, Dr. Adam's

observations do not support his conclusions. Although he noted Plaintiff exhibited an anxious

mood, he also noted Plaintiff's judgment and impulse control were good. Tr. 414. His findings

do not support the conclusions that Plaintiff cannot sustain her concentration and persistence on

simple tasks, and cannot adapt to typical work environments. Tr. 415. Dr. Adams also failed to

give explanations for the limitations he ascribed to Plaintiff. *Id.* Moreover, Dr. Adam's

conclusions are indefinite. *Id.* He used "seems to" and "does not seem able to" in his conclusions. *Id.* The inconclusive nature of Dr. Adam's opinion undermines its supportability.

Plaintiff also argues, since the ALJ discounted all medical opinions in the record, his conclusions are not supported by "some medical evidence." ECF No. 17 at 4. However, an ALJ does not necessarily have to support his conclusion with medical opinions. *See Halverson*, 600 F.3d at 930 (affirming RFC finding when ALJ discounted all medical opinions, but considered claimant's symptoms, physician observations, and claimant's mental status examinations); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (affirming RFC finding when ALJ discounted medical opinion evidence, but cited treatment notes and claimant's responsiveness to treatment). Moreover, in determining a claimant's RFC, an ALJ must consider only some medical evidence as part of his consideration of all relevant evidence, including medical records, observations, and a claimant's subjective statements. *Koch v. Kijakazi*, 4 F. 4th 656, 667 (8th Cir. 2021). The ALJ in this case properly relied on medical observations and treatment notes in determining Plaintiff's RFC. Tr. 14, 18. Among other evidence, the ALJ relied on "the PTSD and depression symptoms noted by her medical providers," Plaintiff's "observed anxiety at medical examinations," and her "mood difficulties as observed by medical professionals." *Id.* at 18. Thus, the ALJ appropriately considered the medical record in determining the RFC.

## V.   Conclusion

The ALJ properly considered all relevant evidence in the record, including Plaintiff's hearing testimony, Plaintiff's Function Report, medical records, and medical opinions. The ALJ's decision is supported by substantial evidence in the record as a whole about Plaintiff's ability to concentrate and adapt in the workplace. Where substantial evidence supports the ALJ's decision, it may not be reversed merely because substantial evidence may support a different

outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (*citing Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Adria Rivers' Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 11th day of April, 2022.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE